**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| DELTON GOODRUM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:24-cv-0111 (PTG/WEF) |
| CITY OF ALEXANDRIA, a municipal | ) | |
| Corporation of Virginia | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO THE CITY OF ALEXANDRIA'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF LT. GOODRUM'S MOTION FOR SUMMARY JUDGMENT

Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd. Suite 700
Arlington, VA 22209
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
        kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Delton Goodrum*

i

## TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………..1

**RULE 56(c) OBJECTIONS**……………………………………………………..2

**RESPONSE TO CITY'S STATEMENT OF MATERIAL FACTS**……………….…………4

**LT. GOODRUM'S STATEMENT OF MATERIAL FACTS**………………………………18

**ARGUMENT**………………………………………………………………28

    **I.**    **BOTH DIRECT AND CIRCUMSTANTIAL EVIDENCE SURROUNDING LT. GOODRUM'S NON-SELECTION FOR PROMOTION GIVE RISE TO AN INFERENCE OF DISCRIMINATION**………...…………………29

        **A. Hayes' Statements During the Lieutenants' Meeting Are Direct Evidence of Discrimination**……………………………………………29

        **B. The Circumstances Surrounding Lt. Goodrum's Non-Selection Establish an Inference of Race-Based Discrimination**………………31

            *1. The City Failed to Adhere to Its Own Policies Regarding Promotions*……………………………………………..32

            *2. Lt. Goodrum's Qualifications for the Position of Captain Were Superior to Those of Newcomb*……………………………...33

            *3. Hayes Transferred Lt. Goodrum to a Less Desirable Position and Replaced Him with a Junior, White Officer*...……………………………………………..34

            *4. Hayes Disproportionately Selected White Candidates for Promotion to Assistant Command and Command Level Positions During His Tenure as Chief*………………..…...34

            *5. Hayes' Membership in the Same Protected Class as Lt. Goodrum Does Not Overcome the Inference of Discrimination*……………………………………………34

            *6. The City's Proffered Reasons for Lt. Goodrum's Non-Selection Are False*...……………………………………………..35

    **II.**    **THE REASONS OFFERED BY THE CITY FOR ITS NON-SELECTION OF LT. GOODRUM ARE PRETEXT FOR DISCRIMINATION**…………36

**A.  The City Has Offered Evolving Explanations for its Non-Selection of Lt. Goodrum for Promotion**……………………...……………..………36

**B.  The City Can Offer No Contemporaneous Evidence of Its Proffered Reasons for the Non-Selection of Lt. Goodrum…**……………………38

**CONCLUSION**……………………………………………………………………...…39

## TABLE OF AUTHORITIES

*Cases*

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
    258 F. Supp. 2d 461 (W.D. Va. 2004)…………………………………….……..1

*Anderson v. G.D.C., Inc.*,
    281 F.3d 452 (4th Cir. 2002)……………………………………………………….....1

*Anderson v. Westinghouse Savannah River Co.*,
    406 F.3d 248 (4th Cir. 2005)…………………………………………....…31, 35, 36

*Bandy v. Salem, Virginia*,
    59 F.4th 705 (4th Cir. 2023)……………………………………………………..29

*Castenada v. Partida*,
    430 U.S. 482 (1977)……………………………………………………….......34

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)…………………………………………………………...1

*Cline v. Roadway Express, Inc.*,
    689 F.2d 481 (4th Cir. 1982)……………………………………………………30

*Dennis v. Columbia Colleton Medical Center, Inc.*,
    290 F.3d 639 (4th Cir. 2002)……………………………………………………35

*Jackson v. Cal-Western Packaging Corp.*,
    602 F.3d 374 (5th Cir. 2010)……………………………………………………30

*Marlow v. Chesterfield Cnty. Sch. Bd.*,
    749 F.Supp. 2d 417 (E.D. Va. 2010)………………………………………………30

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)…………………………………………………...29, 31, 32

*Miller v. Johnson*,
    515 U.S. 900 (1995)……………………………………………………..35

*Oncale v. Sundowner Offshore Svcs.*,
    523 U.S. 75 (1998)……………………………………………………34

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)………………………………………………….……...35, 36

*Ross v. Communications Satellite Corp.*,
　　759 F.2d 355 (4th Cir. 1985)…………………………………………………………1

*Taylor v. Va. Union Univ.*,
　　193 F.3d 219 (4th Cir. 1999) (en banc)……………………………………………30

*Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*,
　　57 F.3d 1317 (4th Cir. 1995)………………………………………………………1


**Rules**

Fed. R. Civ. P. 56(c)………………………………………………………………*passim*


**Statutes**

28 U.S.C. § 1746……………………………………………………………..*passim*

Plaintiff Delton Goodrum ("Lt. Goodrum" or "Plaintiff"), by undersigned counsel, submits this memorandum in support of his Motion for Summary Judgment against the City of Alexandria ("City," or "Defendant") and in opposition to the City's Motion for Summary Judgment (Dkt. 42, 43).[1]

## INTRODUCTION

This matter appears before the Court on the City's Motion for Summary Judgment and Lt. Goodrum's Motion for Summary Judgment with respect to his claim of failure to promote on the basis of race in violation of Title VII (Count I) against the City.

The facts put forward by the City are not supported by the quality and quantity of evidence it offers and are not adequate to support a finding of summary judgment in its favor. Each *prima facie* element of Lt. Goodrum's failure to promote claim is supported by evidence on the record, and the City's non-discriminatory explanations for the promotional decisions at issue are demonstrably pretext for discrimination.

No genuine dispute of material fact remains: race played an impermissible role in the City's non-selection of Lt. Goodrum for promotion, and the City's attempts to provide a legitimate basis for the decision are pretext for discrimination. As such, this Court should deny the City's Motion for Summary Judgment and grant Lt. Goodrum's Motion for Summary Judgment with respect to this claim.

## STANDARD OF REVIEW

"Summary judgment is appropriate when there is 'no genuine issue of material fact,' given the parties' burdens of proof at trial." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,

---

[1] Plaintiff's Memorandum in Opposition to the City's Motion for Summary Judgment (Dkt. 42, 43) and Memorandum in Support of his Motion for Summary Judgment have been combined consistent with this Court's Order of February 13, 2025. (Dkt. 45).

258 F. Supp. 2d 461, 464 (W.D. Va. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). "In determining whether the moving party has shown that there is no genuine

dispute of material fact, a court must assess the factual evidence and all inferences to be drawn

therefrom in the light most favorable to the non-moving party." *Id.* (citing *Ross v.

Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)). A dispute of material fact is

"genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to

return a verdict for that party. *Anderson*, 477 U.S. at 248-49.

To survive a summary judgment motion, "[t]he disputed facts must be material to an

issue necessary for the proper resolution of the case, and the quality and quantity of the evidence

offered to create a question of fact must be adequate to support a jury verdict." *Thompson

Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citation omitted).

The non-moving party may not rest upon a "mere scintilla" of evidence but must instead offer

specific facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986); *Anderson*, 477 U.S. at 252.

## **RULE 56(c) OBJECTIONS TO CERTAIN FACTS ASSERTED BY THE CITY**

Rule 56(c) of the Federal Rules of Civil Procedure requires that facts asserted in a motion

for summary judgment be supported by citation to particular parts of materials in the record. Fed.

R. Civ. P. 56(c)(1)(A). The City relies on two deficient declarations of Don Hayes as the sole

support for several assertions of fact. Def.'s Exs. 2 and 17.[2] These declarations are not properly a

part of the record in this matter as both fail to meet the requirements applicable to unsworn

---

[2] The City omitted the last page of Don Hayes' declaration submitted as Defendant's Exhibit 17.
The last page of this document is an uncompleted form for notarization. *Compare* Def.'s Ex. 17
to Pl.'s Ex. C.

declarations and affidavits submitted in support of a motion for summary judgment. Fed. R. Civ. P. 56(c)(4).

Unsworn affidavits and declarations must meet the requirements of 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(c)(4), Advisory Comm. Notes (2010 Amendment).[3]

The facts supported solely by Hayes' deficient declarations should be disregarded. These facts are found in paragraphs 3, 26, 37, 44-46, 52, 56, 60, 68, 70, and 79 of the City's Motion for Summary Judgment and are incorporated into the City's argument as follows:

- "Chief Hayes' belief that Lt. Downey would do well in the role was proven correct." Def.'s Mot. for Summ. J. 22 (reflecting ¶¶ 44-45).

- "No new initiatives were created during Goodrum's tenure in recruiting and goals were routinely missed." Def.'s Mot. for Summ. J. at 21 (reflecting ¶ 52).

In addition, Plaintiff asks this Court to disregard facts asserted by the City without any citation to support in the record, including the following:

- "… [D]uring Chief Hayes's tenure, the percentage of non-white officers in the Department increased substantially." Def.'s Mot. for Summ. J. at ¶ 6.

- "Lt. Goodrum did not have the kind of community policing experience even remotely on par with Captain Ballentine." Def.'s Mot. for Summ. J. at 21.

- "Lt. Goodrum did not have the experience in community involvement that Jerry Newcomb possessed and in the Chief's assessment [sic]." Def.'s Mot. for Summ. J. at 23.

---

[3] In lieu of a sworn affidavit, facts asserted upon motion for summary judgment may be accepted at if it bears the following declaration:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

28 U.S.C § 1746.

- "The City of Alexandria Police Department does not allow promotion of individuals who are under an active investigation." Def.'s Mot. for Summ. J. at 23.

## RESPONSE TO THE CITY'S STATEMENT OF MATERIAL FACTS [4]

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed. Hayes did not emphasize diversity in hiring and promotions during his tenure as Police Chief. *See* paragraphs 5-12, *infra*.

5. Undisputed.

6. Disputed. The City fails to properly support this assertion of fact per Federal Rule of Civil Procedure Rule 56(c)(1) and it should not be considered in support of the City's Motion.

7. Disputed. The City relies on the comparison of data from June 30, 2021, nearly a year *prior* to the start of Hayes' tenure as Chief, with data from June 30, 2024, approximately five months *after* Hayes' tenure as Chief ended. Def.'s Exs. 4-6. As to Hayes' tenure, the City promoted Hayes to the position of Chief on a permanent basis on April 18, 2022. Def.'s Ex. 6 at 3. Hayes announced his retirement from the Department in January 2024, effective February 9, 2024. Def.'s Ex. 5 at 5.

Hayes did not promote anyone to the command or assistant command level positions at issue during his tenure as Acting Chief. *See* Pl.'s Ex. D at 5.

Furthermore, the City errs in its inclusion of the demographics of entry-level, non-supervisory positions such as "police officer" and "detective" in its analysis. Hayes' promotional

---

[4] The City's assertions of fact found within the numbered paragraphs of its Motion for Summary Judgment are hereafter referred to as "Defendant's Statement of Facts" or "Def.'s SOF."

decision at issue only affected sworn officers who held a supervisory role in the Department, and proper analysis of the demographic data should be restricted to those who served in the position of either Sergeant, Lieutenant, or Captain. Def.'s Ex. 14 at 2, § 4.21.03 (defining "rank" and relation to competitive promotional processes).

Finally, the City's reliance on the proportion of white vs. non-white officers within the Department is misplaced. Lt. Goodrum has defined his protected class as "Black," not "non-white," and the City's inclusion of data specific to all non-white employees is not relevant or probative with respect to Lt. Goodrum's claim.

Broken down by position: At the start of Hayes' tenure as Chief in April 2022, zero (0) of the seven (7) individuals in the position of Captain were Black; one (1) of the sixteen (16) individuals in the position of Lieutenant were Black; and twelve (12) of the forty-six (46) individuals in the position of Sergeant were Black.[5]

Broken down by position: At the end of Chief Hayes' tenure as Chief in 2024, zero (0) of the eight (8) individuals in the position of Captain were Black; two (2) of the sixteen (16) individuals in the position of Lieutenant were Black; and seven (7) of the forty-seven (47) individuals in the position of Sergeant were Black.[6]

8.      Disputed. At the time of Hayes' resignation in February 2024, fewer Black individuals served in sworn supervisory positions within the Department. *See* paragraph 7, *supra*.

---

[5] With these errors accounted for, the demographic evidence reveals that, at the time Hayes began in his permanent role as Chief, approximately nineteen (19%) percent of sworn supervisory officers at the Department were Black, or thirteen (13) of the sixty-nine (69) individuals who held the position of either Sergeant, Lieutenant, or Captain. Def.'s Ex. 4.

[6] Only nine (9) of the seventy-one (71) officers who served in supervisory positions at the time Hayes announced his resignation were Black, or approximately thirteen (13%) percent of sworn supervisory officers at the Department. Def.'s Ex. 5.

9.    Disputed. While the number of white sworn personnel at all levels did decrease during Hayes' tenure as Acting Chief and Chief, factors other than Hayes' hiring decisions dictated that number. For example, thirty-six (36) white officers left the Department by reason of resignation or termination during Hayes' tenure as Acting Chief and Chief. Def.'s Exs. 5-7.

10.    Disputed. *See* paragraph 9, *supra*.

11.    Disputed. Pursuant to the Department's records, between April 18, 2022 and February 9, 2024, Hayes oversaw the promotion of nine (9) supervisory officers to higher ranking positions, eight (8) of whom were white. This included the promotion of C. Ballantine (white) from Lieutenant to Captain on June 11, 2022, and the promotion of A. Mastrostefano (white) from the position of Detective II to Sergeant on that same date. Def.'s Ex. 6 at 3.

Hayes also promoted J. Newcomb (white) from Lieutenant to Captain on December 10, 2022; J. East (white) to the position of Sergeant to Lieutenant on April 29, 2023, Def.'s Ex. 7 at 2-3; M. May (white) and J. North (white) from the position of Lieutenant to the position of Captain on January 6 2024; and promoted J. Harrington (white), A. Morgan (white), and A. Asonglefac (Black) from the position of Sergeant to Lieutenant on that same date. Def.'s Ex. 5 at 2-3. Furthermore, the examples provided by Defendant do not stand up to scrutiny:

a.    Disputed. This promotion took place on July 10, 2021 prior to Hayes' tenure as Chief. Def.'s Ex. 6 at p. 2.

b.    Disputed. This promotion took place on September 18, 2021, prior to Hayes' tenure as Chief. Def.'s Ex. 6 at p. 2.

c.    There is no corresponding paragraph (c) in Defendant's Motion.

d.    There is no corresponding paragraph (d) in Defendant's Motion.

e.    Partially disputed. Plaintiff does not dispute the City's promotion of Sgt. T. Moore (Black) to the position of Lieutenant on or about July 22, 2023, but the City has not produced evidence of Hayes having been the decisionmaker responsible for Moore's selection.

Specifically, the City did not provide a Personnel Action Form ("PAF") for this promotion which would bare Hayes' signature if he made this decision.[7] Plaintiff further disputes the relevance of Moore's promotion as the instant case involves the Captain's promotional process, not Lieutenant's.

f.  Partially disputed. Plaintiff does not dispute that the City promoted Sgt. A. Asonglefac (Black) to the position of Lieutenant on or about January 6, 2024, but has provided no PAF nor other evidence of Hayes' involvement in this promotional decision, which occurred shortly before Hayes' announcement of his resignation on or about January 29, 2024.[8] Plaintiff further disputes the relevance of Asonglefac's promotion as the instant case involves the Captain's promotional process, not Lieutenant's.

g.  Partially disputed. Plaintiff does not dispute the City's promotion of Ofc. A. Howard (Black) to the position of Sergeant on or about January 6, 2024, but has provided no PAF nor other evidence of Hayes' involvement in this promotional decision, which occurred shortly before Hayes' announcement of his resignation on or about January 29, 2024.[9] Plaintiff further disputes the relevance of Howard's promotion as the instant case involves the captain's promotional process, not Sergeant's.

h.  Partially disputed. Plaintiff does not dispute that the City promoted Ofc. S. Keith (Hispanic) to the position of Sergeant on or about January 6, 2024, but has provided no PAF nor other evidence of Hayes' involvement in this promotional decision, which occurred shortly before Hayes' announcement of his resignation on or about January 29, 2024.[10] Plaintiff further disputes the relevance of Howard's promotion as the instant case

---

[7] The City completes a "Personnel Action Form" to memorialize promotions, and these forms bear the signature of the official who authorized the change. *See, e.g.* Def.'s Exs. 19-22, 28 and 33. Hayes signed off on the Personnel Action Forms for promotions in which he played a decision-making role. *See* Def.'s Ex. 28 (Personnel Action Form for Ballantine, signed by Hayes); Def.'s Ex. 33 (Personnel Action Form for Newcomb, signed by Hayes).

While the same documentation should be available to the City with respect to each of the promotional decisions listed in paragraph 11, no such documentation has been produced.

[8] *See* para. 5, *supra.*

[9] *See* para. 5, *supra.*

[10] *See* para. 5, *supra.*

involves the Captain's promotional process, not Sergeant's. Keith is not Black and is not a member of Lt. Goodrum's protected class.

12.    Partially disputed. Plaintiff does not dispute that the City hired Easton McDonald (Black) and Tina Laguna (Black) as Assistant Chiefs in February 2023 and October 2023, respectively. Plaintiff disputes Hayes' involvement in the decision to hire McDonald and Laguna. The City has not produced any documentation or record of communications demonstrating Hayes had any role in these hiring decisions, including PAFs which would evidence the decision-making process. Plaintiff further disputes the relevance of the hiring of the Assistant Chiefs as these hires were neither promotions from within the department nor at the same rank as the promotional process at issue as this is a cause of action for failure to *promote*, not failure to *hire*.

13.    Undisputed.

14.    Undisputed.

15.    Undisputed.

16.    Undisputed.

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    Undisputed.

21.    Undisputed.

22.    Undisputed.

23.    Undisputed.

24.    Undisputed.

25.    Undisputed.

26.     Disputed. The Lieutenant's meeting described took place on June 30, 2021, at which time Hayes had already assumed the position of Acting Chief. *See* Def.'s Ex. 4 (providing former Chief Michael Brown resigned on June 25, 2021); Def.'s SOF at ¶ 2 ("Chief Hayes was made Acting Chief in June 2021"); *see also* Declaration of Lt. Goodrum, attached hereto as Plaintiff's Exhibit A.

27.     Partially disputed. *See* paragraph 26, *supra*.

28.     Partially disputed. *See* paragraph 26, *supra*.

29.     Disputed. *See* paragraph 26, *supra*. Furthermore, while Plaintiff does not dispute that Lt. Goodrum and Hayes made these respective statements at their deposition, Plaintiff rejects any implication that Hayes meant something other than race when he mentioned diversity or that Hayes' comments preclude that race was a motivating factor in his decision-making.

30.     Disputed. *See* paragraph 26, *supra*. Furthermore, while Plaintiff does not dispute that Hayes made this statement at his deposition, whether this statement is true is a credibility determination that is improper to make at this time.

31.     Disputed. Plaintiff disputes Hayes having asked the rhetorical question described in Defendant's paragraph 31 during the June 2021 Lieutenants' meeting. *See* Pl.'s Ex. P (Patterson Decl.); Pl.'s Ex. M (Milner Decl.).

32.     Undisputed.

33.     Undisputed.

34.     Undisputed.

35.     Partially disputed. Hayes met individually with some – but not all – of the lieutenants who had attended the meeting. He did not meet with Lt. Goodrum. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 90-91; Pl.'s Ex. P (Patterson Decl.).

36.    Undisputed.

37.    Disputed. Hayes served as Acting Chief at the time of the Lieutenant's meeting on June 30, 2021, as provided in paragraph 26, *supra*. In the position of Acting Chief, Hayes knew he had the authority to make command-level promotional decisions, but elected not to. Pl.'s Ex. D at 5.

Despite assuming the permanent position of Chief in April 2022, Hayes postponed the selection of a candidate for Captain until June 23, 2022. In an email to the candidates dated May 14, 2022, Hayes explained that he had intended to move forward with the promotion several weeks earlier, but he:

> . . . was notified of a situation had risen within the organization that needed to be handle [sic] prior to any promotions and/or movement of personnel. The other complicated piece is I can't speak about the situation. This matter is still ongoing and so I wanted you to know that once it is resolved I plan to make promotions . . .".

Pl.'s Ex. F.

At the time of the Lieutenant's meeting, there was no indication that the list of candidates eligible for the Captain's position might change or that Hayes might be asked to select from a candidate list other than that created in December 2020. The City did not announce that it did not intend to promote from the established eligibility list until July 15, 2021. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 9); Def.'s Ex. 16.

38.    Undisputed.

39.    Undisputed.

40.    Undisputed.

41.    Undisputed.

10

42.    Disputed. Defendant's assertion is internally inconsistent. At all relevant times, Traffic Safety was *part of* Patrol Division. Lt. Goodrum's transfer to Traffic Safety constituted a transfer *within* a Patrol Division. Def.'s Ex. 23 (providing the position to which Hayes' assigned Lt. Goodrum is within Patrol Division 2). As attested to by Cpt. Downey, positions within the Patrol Division are less desirable because they require working on the weekend, allow for less creativity/flexibility, and contribute less to an officer's professional development because all officers start in Patrol. Def.'s Ex. 24.

43.    Disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

The work performed by Lt. Goodrum as Training and Recruitment Commander within the HR and Training Division met and exceeded expectations for the role. In an evaluation of his performance in the role dated June 10, 2021, Lt. Goodrum's supervisor rated him as "outstanding" with respect to all seventeen categories on which his performance was evaluated. Pl.'s Ex. G at 9. His supervisor provided that Lt. Goodrum had handled his significant transition to the Administrative Services Bureau "with professionalism and outstanding work ethic." Pl.'s Ex. G at 9.

In an evaluation of his performance in the role dated April 13, 2022, Lt. Goodrum's supervisor wrote:

> Lieutenant Goodrum contributed greatly to the changes and growth of the Training and Recruitment programs. Lieutenant Goodrum effectively communicated his ideas, goals, and projects, directed his staff in successfully meeting those goals and positively contributed to the overall performance of the unit through consistent and high-quality work output.

Pl.'s Ex. H at 9. *See also* Pl.'s Ex. I (Hurley Decl.); Pl.'s Ex. J (Rivas Decl.); Pl.'s Ex. K (McCarty Dep. Tr.) at 15:15-16:7.

44.    Disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746. The City can offer no admissible evidence in support of Hayes' rationale for replacing Lt. Goodrum with Downey or that Downey outperformed Plaintiff in that role.

45.    Disputed. As discussed supra, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.  The City can offer no admissible evidence in support of this assertion.

46.    Disputed. As discussed supra, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.  The City can offer no admissible evidence in support of Hayes' rationale for transferring Lt. Goodrum to traffic safety beyond his own, self-serving testimony.

47.    Undisputed.

48.    Undisputed.

49.    Partially disputed. *See* paragraph 43, *supra*. The work performed by Lt. Goodrum as a recruiter within the HR and Training Division met and exceeded expectations for the division, and Lt. Goodrum worked diligently to achieve the goals attendant to his role.

Following the goals outlined by Hayes, Lt. Goodrum brought in a class of 29 recruits to the Academy despite the impact of COVID-19 and the murder of George Floyd on law enforcement recruitment nationwide. Pl.'s Ex. I (Hurley Decl.) at ¶ 4; Def.'s SOF ¶ 48.

Lt. Goodrum routinely brought in qualified candidates who passed the Academy and became valuable members of the Department. Pl.'s Ex. I (Hurley Decl.) at ¶¶ 6-7. During his time in the role, Lt. Goodrum assembled a recruitment team of regular patrol officers, encouraged their attendance at community events and active participation in recruitment efforts.

Pl.'s Ex. I (Hurley Decl.) at ¶ 8. Lt. Goodrum's supervisor praised his work ethic in the performance evaluations he received while in the role. Pl.'s Exs. G; H; K (McCarty Dep Tr.) at 15:15-16:7.

50.    Disputed. Lt. Goodrum brought "input" and "innovation" and "motivation" to his position in the HR Training Division. *See* paragraph 49, *supra*.

In an evaluation of his performance in the role dated April 13, 2022, Lt. Goodrum's supervisor wrote that Lt. Goodrum was "instrumental in procuring new technology for the unit with the purpose of improving processes and training," and that he "contributed greatly to improving hiring and recruitment efforts and took great interest in cultivating relationships with new recruits . . .". Pl.'s Ex. H at 9.

51.    Disputed. Lt. Goodrum recruited individuals for the Department at a successful rate given the outside factors Hayes' himself identified which hampered recruitment at the time Lt. Goodrum held the position. *See* paragraph 49, *supra*.

52.    Disputed. Lt. Goodrum began new initiatives in his role as a recruiter within the HR Training Division. *See* paragraph 49, *supra*. He also produced high quality work in this role. *See* paragraph 43, *supra*.

53.    Undisputed.

54.    Disputed. *See* paragraph 43, *supra*. Lt. Goodrum did not send a deficient memo up the chain of command to Hayes. Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 113:11 – 115:13; Pl.'s Ex. K (McCarty Dep. Tr.) at 15:9-17:12. Lt. Goodrum's supervisor in the role found that he "produce[d] exceptional precise, neat, and very organized work" and that he wrote "well organized, understandable, and accurate reports." Pl.'s Ex. G at 1, 4.

55.    Disputed. *See* paragraphs 43-54, *supra*.

56.    Disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

57.    Undisputed.

58.    Undisputed that Hayes made this statement. However, whether this statement is true is a credibility determination that is improper to make at this time.

59.    Disputed. The Department issued a Special Directive regarding Ballantine's promotion on June 21, 2022. This Directive provides that Ballantine's promotion became effective February 11, 2022. Def.'s Ex. 27.

60.    Disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

61.    Undisputed that Hayes made this statement. However, whether this statement is true is a credibility determination that is improper to make at this time.

62.    Partially disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

63.    Undisputed.

64.    Undisputed.

65.    Partially disputed. Plaintiff disputes the implication that he did not have significant community engagement experience.

Lt. Goodrum has an extensive history of engagement in community policing. He participated in community walks, conducted "coffee with cops" events, organized career day events at headquarters for local youth, served as a motorcycle officer conducting community outreach, participated in funeral escorts to show community support, engaged in honor guard parades and conducted presentations for the Citizens Police Academy. Pl.'s Ex. R (Lt. Goodrum

14

Dep. Tr.) at 109:3 – 112:15. Lt. Goodrum repeatedly received praise for his excellent community engagement skills, his successful management of multiple community-focused units, and his strong relationships with community stakeholders. *See* Pl.'s Ex. L (Moore Decl.); Pl.'s Ex. M (Milner Decl.).

66.    Undisputed.

67.    Partially disputed. As discussed supra, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.  Furthermore, this factual assertion explains why Hayes felt the Department needed a Captain in the Division, but not why he selected Lt. Downey to fill the role.

68.    Disputed. As discussed supra, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

69.    Partially disputed. Plaintiff disputes the implication that Lt. Goodrum was not similarly familiar with the Division, motivated, and detail oriented. Lt. Goodrum worked in the Division from May 2020 until March 2022 and performed exceptionally in the role. *See* paragraphs 43-54, *supra*. Furthermore, whether this statement is true is a credibility determination that is improper to make at this time.

70.    Partially disputed. As discussed supra, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

71.    Undisputed that Hayes made this statement. However, whether this statement is true is a credibility determination that is improper to make at this time.

72.    Undisputed.

73.    Undisputed.

74.     Disputed. Lt. Goodrum's grievance concerned the City's discriminatory failure to consider him for promotion to Captain following Hayes' statements about race and diversity at the June 2021 Lieutenant's meeting and the backlash that followed. Def.'s Ex. 32 at 3; Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 84:5-85:9.

75.     Undisputed.

76.     Partially disputed. Plaintiff disputes the implication that Lt. Goodrum did not have similar or superior longevity in the Department and a demonstrated ability to relate well to his coworkers. Lt. Goodrum has been with the Alexandria Police Department since April 29, 1996; several months prior to Newcomb joining the Department. Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 3:22 – 4:5; Def.'s SOF ¶ 77.

Lt. Goodrum is well liked and respected by his coworkers. *See* Pl.'s Ex. L (Moore Decl.) at ¶¶ 4,5; Pl.'s Ex. B (Bridgeman Decl.) at ¶ 5; Pl.'s Ex. J (Rivas Decl.); Pl.'s Ex. I (Hurley Decl.); Pl.'s Ex. M (Milner Decl.) at ¶ 8. *See also* Pl.'s Ex. G at 9 (providing "Lieutenant Goodrum has been an excellent example for his staff, and he has garnered their respect and trust" and Lt. Goodrum's subordinates "show good morale and teamwork due to [Lt. Goodrum's] efforts.").

77.     Undisputed.

78.     Partially disputed. Newcomb received the award described by the City in May 2019, more than three and a half years prior to the promotional decision at issue. Pl.'s Ex. S.

79.     Disputed. As discussed *supra*, Plaintiff objects to Exhibit 17 as deficient under Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746.

80.     Partially disputed. Plaintiff disputes Hayes having considered the entire careers of the candidates eligible for promotion prior to his selection of Newcomb in December 2022. The

City can produce no admissible evidence to support this assertion. Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 32:11-35:13.

81. Disputed. Hayes knew that the investigation had concluded prior to his decision to promote Newcomb in December 2022. On November 15, 2022, Hayes reviewed the results of the investigation and concurred with the finding that Lt. Goodrum had not committed any violations. Pl.'s Ex. O at 2. Pursuant to a memorandum memorializing the investigation, dated December 6, 2024:

> On Tuesday, November 15, 2022, I briefed Chief of Police Don Hayes regarding the information that was provided by [complaining party] as well as Lieutenant Goodrum's account of the incident. My recommendation was that none of the information amounted to a viable complaint. . . . Chief Hayes concurred and directed me to contact [complainant] and tell him there was no complaint.

Pl.'s Ex. O. At Hayes' direction, on November 15, 2022, the investigator sent an email to the party that had initiated the complaint against Lt. Goodrum and wrote:

> I am writing to inform you that the information you provided has been reviewed. None of the information you provided rises to the level of a violation of the Code of Virginia, Alexandria Police Department Directives, or City of Alexandria Administrative Regulations.
>
> . . . .
> As such, *we consider this matter closed.*

Pl.'s Ex. O at 2 (emphasis added).[11]

82. Disputed. The City has provided no documentation of such a rule or contemporaneous account of Hayes using such a rule.

---

[11] The City attached only the first page of this memorandum to its Motion for Summary Judgment. The fact that the investigation had been deemed closed on November 15, 2022 at Hayes' direction and prior to Hayes' decision to promote Newcomb is found later in that same memorandum. *See* Def.'s Ex. 35.

83.     Disputed. *See* paragraph 81, *supra*.

84.     Undisputed.

85.     Disputed. This is the City's first mention of Deputy City Manager Yon Lambert during the course of this litigation. The City did not disclose Lambert as an individual with discoverable information related to the promotion of Newcomb; Pl.'s Ex. Z (Def.'s Initial Disclosures), nor did it name Lambert as an individual with whom Hayes discussed Lt. Goodrum's suitability for the position of Captain. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 11). Lambert was not mentioned in Hayes' deposition. Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 33:17-35:13; 56:5-7.[12]

No one from the City Manager's Office is provided in the City's list of individuals who played a role in the promotional decisions at issue. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 10).

## LT. GOODRUM'S STATEMENT OF ADDITIONAL MATERIAL FACTS [13]

1.     Lt. Goodrum has served as a sworn officer of the Alexandria Police Department for nearly 30 years, and has served in the position of Lieutenant within the Department since 2014. Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 3:22 – 4:5; Pl.'s Ex. X.

---

[12] The City lists "Deputy City **Attorney** Lambert" as an individual with discoverable information in its response to Interrogatory No. 2 and provides only that he "[l]ikely has discoverable information about the role of the City Manager's Office in hiring and promotions at the APD." Pl.'s Ex. Q (Def.'s Resp. to Interrog. 2).

The City did not provide that Lambert had information relevant to the promotion decisions at issue, and did not list any individual from within the City Manager's Office as having a role in these decisions. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 10). Plaintiff elected not to depose Lambert based on an understanding that he had limited information relevant to this matter, and that any information Lambert could provide would likely be privileged. Having now learned that Lambert is not an attorney with the City, Plaintiff would have chosen differently.

[13] The paragraphs within this section are hereafter referred to as "Plaintiff's Statement of Facts" or "Pl.'s SOF."

2.    Lt. Goodrum has significant and extensive criminal investigation experience arising from his nearly thirty years within the Department. Lt. Goodrum served as the Vice and Narcotics Commander for the Criminal Investigations Division from 2015-2017; and subsequently served as the Department's Special Operations Team (commonly known as "SWAT" team) Commander for approximately four (4) years. Ex. A (Decl. of Lt. Goodrum) at ¶¶ 6-13.

3.    Lt. Goodrum has demonstrated a pattern of extensive engagement with the community. *See* paragraph 65 in response to Defendant's Statement of Facts, *supra*.

4.    Lt. Goodrum is well-liked and respected by his colleagues, supervisors, and subordinates at the Department. Pl.'s Ex. L (Moore Decl.) at ¶¶ 4,5; Pl.'s Ex. B (Bridgeman Decl.) at ¶ 5; Pl.'s Ex. J (Rivas Decl.); Pl.'s Ex. I (Hurley Decl.); Pl.'s Ex. M (Milner Decl.) at ¶ 8. *See also* Pl.'s Ex. G at 9.

5.    Having grown up in Alexandria, Virginia, Lt. Goodrum is well known and well liked throughout the community. Pl.'s Ex. M (Milner Decl.) at ¶ 8.

***2020 Captain's Promotional Process***

6.    On August 24, 2020 the Department began an internal promotion process for a Police Captain position. Def.'s Ex. 10. This promotional announcement, governed by Department Policy 4.21 on Sworn Promotions, described the form of the testing process for the position and each of the elements of the process that will contribute to the total score of each candidate. Def.'s Ex. 14.

7.    The promotional announcement for Captain lists all of the dimensions on which candidates will be tested to determine their suitability for the position, including Teamwork and

Cooperation, Organizational Commitment and/or Citizenship, Command Related

Experience/Education, and Commitment to Community Policing. Def.'s Ex. 10 at 2.

8.      In or around October 2020, Lt. Goodrum applied for promotion to the position of

Captain alongside approximately eight (8) of his colleagues. Def.'s Ex. 13.

9.      A third-party consulting company, Morris & McDaniel, conducted a thorough

assessment of candidates composed of an oral tactical exercise, an oral presentation exercise, and

the submission of a professional history portfolio by each candidate. Def.'s Ex. 10. The purpose

of Morris & McDaniel's role, pursuant to Department policy, is, in part, to "ensur[e] that the

elements of the promotional process are job related and nondiscriminatory." Def.'s Ex. 14

("Sworn Promotions," 4.21.04(D)(5)).

10.     The oral tactical exercise and the oral presentation exercise are intended to test the

following dimensions among candidates: problem identification and analysis, decision making,

interpersonal skills, planning and organizing, and oral communication. Def.'s Ex. 11 at 11-14.

11.     The professional history portfolio evaluated candidates based on their past

performance, achievements, and accomplishments and the relevance of each to the position of

Captain. Candidates were rated on the same four dimensions listed in the promotional job

announcement. Def.'s Ex. 10; Def.'s Ex. 11 at 17-18.

12.     Three (3) assessors were recruited from outside agencies to score the Personal

History Portfolios to ensure consistent and objective scoring of the candidates. Hayes did not

serve as an assessor, but did serve as the internal Subject Matter Expert responsible for

answering questions related to this scoring. Def.'s Ex. 12.

13.    The Department worked with Morris & McDaniel to determine the weight to be afforded to each portion of the assessment, to be reflected in the numerical score earned by each candidate when the assessment concluded. Def.'s Ex. 11 at 2.

14.    Pursuant to the Department's policy on sworn promotions, "[t]he appointment process shall not include any additional testing element but shall be limited to interviews, reviews of past performance and/or a determination of physical ability to perform the job." Def.'s Ex. 14, § 4.21.05(I), "Procedures."

***Results of the 2020 Candidate Assessment for Captain***

15.    All nine (9) candidates who participated in the assessment were deemed eligible for promotion, and Morris & McDaniel compiled a list of these candidates, ranking them in order of numerical score and assigning them to either "Category I" or "Category II" of eligible candidates. Def.'s Ex. 13; Def.'s Ex. 15. The City received this list and shared it with the candidates in December 2020 (the "2020 eligibility list"). Def.'s Ex. 15.

16.    Lt. Goodrum is the only Black individual on the list of eligible candidates. Am. Compl. (Dkt. 12) at ¶ 19; Answer to Am. Compl. (Dkt. 17) at ¶ 19.

17.    Lt. Goodrum ranked third on the list of candidates eligible for promotion. Def.'s Ex. 13; Def.'s Ex. 15. Lt. Goodrum's score placed him in "Category I" among candidates. Def.'s Ex. 14, § 4.21.05(J), "Procedures."

18.    Pursuant to the Department's policy on sworn promotions, selection from the eligibility list is to proceed as follows:

> Candidates from Category I are given priority eligibility for appointment. Once Category I candidates have been considered, candidates may either be appointed from Category II, or a new promotional process may be directed.
> . . . .

> The Chief of Police reserves the right to interview several candidates and/or review the performance records of the candidates as documented in their personnel and Internal Investigation files.

Def.'s Ex. 14, § 4.21.05(J), "Procedures."

### *Hayes' Statements to Others on His Intent to Promote Lt. Goodrum to Captain*

19.    In January or February 2022, Ofc. Warren visited Hayes' office to deliver folders of recruited candidates' information. During this visit, Hayes told Warren that he was going to promote Lt. Goodrum to the position of Captain. Hayes volunteered this information. Warren had not asked him who he intended to promote. Pl.'s Ex. U (Warren Decl.) at ¶ 6.

20.    During a meeting in then-Acting Captain Courtney Ballantine's office in 2021, after the 2020 Captain eligibility assessment had been completed, Ballentine directly asked Hayes if he intended to promote him to the position of Captain. Hayes told Ballantine that he was going to promote Lt. Goodrum because he is Black. Pl.'s Ex. T (Ballantine Decl.) at ¶ 5. Hayes went on to say that he wanted the command staff to resemble the community in Alexandria. Given Alexandria's Black population, having all white captains does not mirror the community. Pl.'s Ex. T (Ballantine Decl.) at ¶ 6.

21.    During a meeting with Scott Patterson on or about July 1, 2021, Hayes explained to Patterson that he had narrowed down his decision to the top three candidates on the eligibility list. Pl.'s Ex. P (Patterson Decl.) at ¶ 8.[14] This is inconsistent from Hayes' statement at a Lieutenant's meeting the previous day, wherein Hayes stated he had already decided to select Lt. Goodrum. Pl.'s Ex. P (Patterson Decl.) at ¶ 9.

---

[14] The top three individuals were: Courtney Ballantine; Matthew Weinert; and Delton Goodrum. Def.'s Ex. 13.

22.    Patterson expressed that, of the top three candidates on the eligibility list, he agreed with Hayes' prior statement that Lt. Goodrum should be promoted first. Pl.'s Ex. P (Patterson Decl.) at ¶ 10.

23.    After Hayes' promoted Ballantine, Lt. Goodrum was the only one of the top three candidates still with the Department, as Lt. Weinert had retired from the Department. Def.'s Ex. 13; *see also* Def.'s Ex. 5 (providing Weinert's retirement date as July 30, 2021).

### *June 2021 Lieutenants' Meeting*

24.    During a Lieutenant's meeting on June 30, 2021, Hayes announced that he intended to select Lt. Goodrum for promotion to Captain because he is Black. Pl.'s Ex. P (Patterson Decl.) at ¶ 4; Pl.'s Ex. M (Milner Decl.) at ¶¶ 4-7.

25.    Hayes did not mention Lt. Goodrum's merits or qualifications during this meeting as the reason he had been selected for promotion. Pl.'s Ex. P (Patterson Decl.) at ¶ 5.

26.    Hayes' announcement was met with criticism and backlash from Lt. Goodrum's white colleagues, who voiced to Hayes their belief that he had only selected Lt. Goodrum because he is Black. Pl.'s Ex. D at 2-4; Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 84:5-85:9; Pl.'s Ex. P (Patterson Decl.) at ¶ 6; Pl.'s Ex. M (Milner Decl.) at ¶¶ 4-7.

27.    Following the meeting, Hayes personally apologized to some of Lt. Goodrum's white colleagues who were present for the offense caused by his statement. Pl.'s Ex. D at 2-4. Hayes did not apologize to Lt. Goodrum. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. O (Lt. Goodrum Dep. Tr.) at 90-91.

***Transfer of Lt. Goodrum Out of Administrative Training and Recruitment Division***

28.    In March 2022, Hayes transferred Lt. Goodrum from his position in the Administrative Services Bureau (ASB), Human Resources & Training Division to a position within the Patrol Operations Bureau (POB), Patrol Division 2, Safety Section. Def.'s Ex. 23.

29.    Hayes filled Lt. Goodrum's position in Administrative Training and Recruitment with Marcus Downey, a junior, white colleague of Lt. Goodrum's. Def.'s Ex. 23.

30.    Traffic and Safety is within the Patrol Division, and positions within this division are considered less desirable by officers. Def.'s Exs. 23, 24.

31.    Several months after the transfer, Hayes relied on Downey's position within the Administrative Training and Recruitment Division to justify his promotion of Downey to the role of Acting Captain in September 2022. Def.'s SOF ¶¶ 68-69.

***Hayes Deviates from the Department's Written Promotional Process to Select Two White Candidates to be Promoted to Captain.***

32.    Hayes disregarded the numerical scores which resulted from Morris and McDaniel's comprehensive assessment of candidates for the Captain position. Pl.'s Ex. E (Hayes Dep. Tr.) at 41:15-42:2.

33.    The Department's written policy on sworn promotion is built upon the objective assessment of candidates by an outside consultant and the eligibility list resulting therefrom. Def.'s Ex. 14. *See* paragraphs 9-14, *supra*.

34.    Hayes' decision not to rely on candidates' performance on the assessment or select in accordance with the eligibility list is directly contradicted by Department policy and rendered the consultant's role in the promotional process — including the process itself and the money spent by the City on that process — entirely meaningless. *See* paragraphs 9-14, *supra*.

***Hayes Selection of Ballantine for Promotion in June 2022***

35.    Hayes delayed his selection of a Captain for promotion until he had been named Chief of the Department in April 2022. *See* paragraph 37 in Resp. to Def.'s Statement of Facts, *supra*. He then continued to delay the decision for an additional six (6) weeks after having been "notified of a situation had risen within the organization that needed to be handle [sic] prior to any promotions and/or movement of personnel." Pl.'s Ex. F.

36.    Despite having informed Warren (*see* paragraph 22, *supra*), Ballantine (*see* paragraph 22, *supra*), and all Lieutenants present at a meeting on June 30, 2021 (*see paragraphs* 27-28, *supra*) that he would promote Lt. Goodrum to Captain, Hayes's selected Ballantine first for promotion in June 2022.

37.    In making his decision to promote Ballantine (white) in June 2022 and Newcomb (white) in December 2022, Hayes did not rely on the four objective dimensions on which candidates were meant to be evaluated, as set forth in the promotion announcement and in the Candidate Orientation Process Guide. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 32:11-35:13; Def.'s Ex. 10; Def.'s Ex. 14.

38.    Before selecting either Ballantine or Hayes for promotion, Hayes did not review the personal history portfolios of candidates which set forth their relevant education, experience, and skills related to the dimensions on which the qualifications of candidates were meant to be determined. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 32:11-35:13.

39.    Hayes did not seek input on any of the candidates from anyone who had supervised them in the past before he selected Ballantine and Hayes. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 32:11-35:13.

40.     Hayes did not seek input on any of the candidates from any source other than himself before he selected Ballantine and Hayes. Pl.'s Ex. E (Hayes Dep. Tr.) at 45:6-14; Pl.'s Ex. N (Hayes 30(b)(6) Dep. Tr.) at 32:11-35:13.

***Respective Qualifications of Jerry Newcomb and Lt. Goodrum***

41.     On or about December 17, 2022, Hayes promoted Newcomb to the position of Captain instead of Lt. Goodrum. Pl.'s Ex. B (Bridgeman Decl.) at ¶¶ 6, 9; Def.'s SOF ¶ 75 (providing Newcomb's promotion became effective December 10, 2022).

42.     At the time Hayes selected Newcomb, Lt. Goodrum is the only individual of the initial "top three" candidates who remained on the 2020 eligibility list. *See* paragraph 26, *supra*.

43.     Newcomb ranked eighth on the list of candidates eligible for promotion and had been placed in "Category II" by the outside consultant who evaluated the candidates.

44.     On December 18, 2022, after having already made the decision to promote Newcomb and having notified Newcomb of the promotion, Hayes emailed Lt. Goodrum's supervisor and asked him if he could think of any reasons why Lt. Goodrum shouldn't be promoted. Pl.'s Ex. B (Bridgeman Decl.) at ¶¶ 7, 9, 10, and attachment B-1; Pl.'s Ex. Q (Def.'s Resp. to Interrog. 11).

45.     Of the total of 100 possible points, the scores the candidates received ranged from 70.24 to 82.18. Newcomb scored 72.70 and Lt. Goodrum scored 80.87 on the assessment as a whole. Def.'s Ex. 13.

46.     Lt. Newcomb ranked lower than Lt. Goodrum in their performance evaluations closest in time to Hayes' December 2022 promotional decision. Lt. Newcomb ranked lower than Lt. Goodrum in seven of the seventeen categories on which both individuals were evaluated. Pl.'s Ex. V; Pl.'s Ex. W.

47.      Newcomb had less tenure at the Department than Lt. Goodrum at the time of Newcomb's promotion. Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 3:22 – 4:5; Pl.'s Ex. X.

**Lack of Contemporaneous Explanations for the Promotion of Newcomb**

48.      The City offered no explanation to Lt. Goodrum for Newcomb's selection for promotion at the time the decision was made in December 2022. Pl.'s Ex. R (Lt. Goodrum Dep. Tr.) at 146:2-15.

49.      The City offered no explanation to the Equal Employment Opportunity Commission for Newcomb's selection for promotion ahead of Lt. Goodrum. Pl.'s Ex. X.

**Hayes History of Promoting White Individuals to Command Positions at APD**

50.      All three of the individuals that Hayes promoted to Sergeant, Lieutenant, or Captain prior to the promotion of Newcomb in December 2022 were white. *See* ¶ 11 in Resp. to Def.'s Statement of Facts, *supra*.

51.      Four of the five individuals that Hayes promoted to Sergeant, Lieutenant, or Captain after the promotion of Newcomb in December 2022 were white. *See* ¶ 11 in Resp. to Def.'s Statement of Facts, *supra*.

**Present and Historical Lack of Black Individuals in Command Positions at APD**

52.      In December 2022, a group of officers and sergeants of color approached Hayes about their concern with the lack of diversity in higher-level command positions. Pl.'s Ex. I (Hurley Decl.) at ¶¶ 9-12.

53.      These individuals reviewed the number of people of color currently serving at the command level within the Department with Hayes and expressed concern that, if the pattern continued, the entire command staff would consist of white males in the coming years. Pl.'s Ex. I (Hurley Decl.) at ¶¶ 9-12.

54.     Hayes dismissed the issues brought to his attention by these officers, asked them what they planned to do about the problem, and took no action himself to address their concerns. Pl.'s Ex. I (Hurley Decl.) at ¶¶ 9-12.

55.     The last Black individual to be promoted to the role of Captain within the Alexandria Police Department is Hayes. This promotion occurred on July 20, 2013. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 21).

56.     The Department's first promotion of a Black individual to Captain occurred on November 7, 1992. In the last thirty-three years, only three (3) Black individuals other than Hayes have been promoted to this role. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 21).

57.     Prior to Hayes, the last promotion of a Black individual to the position of Captain occurred on December 17, 2005. Pl.'s Ex. Q (Def.'s Resp. to Interrog. 21).

58.     From Hayes' promotion to Assistant Chief in 2019 to present, no Black individuals have held the role of Captain within the Department. Pl.'s Ex. Y.

59.     At the time of the promotional decision at issue, December 2022, Lt. Goodrum was the only Black individual who held the rank of Lieutenant. Def.'s Ex. 6.


**ARGUMENT**

The City failed to promote Lt. Goodrum to captain due to his race. While the City challenges Lt. Goodrum's ability to meet his burden of proof, its arguments are fatally flawed, often because the record simply does not support the City's assertions.

The City's purported non-discriminatory reasons for Lt. Goodrum's non-selection are pretextual. Lt. Goodrum bore substantially superior qualifications as compared to Newcomb, the white individual Hayes selected for promotion. Lt. Goodrum, with an outstanding record of

service and deep ties to the Alexandria community, found his career sidelined by Hayes, who insisted on making race — and specifically Lt. Goodrum's race — a factor in his determination. Hayes alleges he used the prospect of Lt. Goodrum's promotion as a lesson in diversity for his white colleagues — effectively using Lt. Goodrum as a prop — and did so with full knowledge of the negative reaction it would generate and with complete disregard for the impact it would have on Lt. Goodrum.

Hayes' actions cost Lt. Goodrum the opportunity for advancement he had earned, and which all accounts demonstrate had been forthcoming. Having left himself no choice but to backtrack from his decision to promote Lt. Goodrum to Captain, Hayes bulldozed through City policy intended to ensure fairness in promotions and selected a lesser qualified white candidate to fill the position instead. This Court should grant summary judgment in favor of Lt. Goodrum on his claim of failure to promote and, as discussed *infra*, should deny Defendant's motion for summary judgment.

## I.    BOTH DIRECT AND CIRCUMSTANTIAL EVIDENCE SURROUNDING LT. GOODRUM'S NON-SELECTION FOR PROMOTION GIVE RISE TO AN INFERENCE OF DISCRIMINATION.

To prevail on a failure to promote claim under Title VII, a plaintiff may either produce direct evidence of discrimination or proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Both direct and circumstantial evidence support the City's non-selection of Lt. Goodrum for promotion resulted from race-based discrimination.

### A.    Hayes' Statements During the Lieutenants' Meeting Are Direct Evidence of Discrimination.

In the Fourth Circuit, derogatory comments can be direct evidence of discrimination. *Bandy v. Salem, Virginia*, 59 F.4th 705, 711-13 (4th Cir. 2023) (adopting the test found in

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010)). A comment constitutes direct evidence of discrimination if it is "(1) related to the protected class of persons to which the plaintiff is a member; (2) [made] proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Jackson*, 602 F.3d at 380 (citation omitted).

During the Lieutenant's meeting, Hayes expressly stated his intent to promote Lt. Goodrum because he is Black. Pl.'s SOF at ¶ 24. Hayes did not mention the merits or qualifications of Lt. Goodrum in support of his decision to promote him, giving the remaining candidates (all white) for the position the impression they would not be selected solely because of their race. Pl.'s SOF at ¶¶ 26-27.

In the Fourth Circuit, direct evidence of bias in an employment action occurs when the employer 'announced, or admitted, or otherwise unmistakably indicated that [race] was a determining factor' in the particular employment action." *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 427 (E.D. Va. 2010) (citing *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982)). Direct evidence consists of "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 589 U.S. 90, 98 (2003).

Following his improper statement about Lt. Goodrum's race, Hayes created a situation where he *needed* to consider race as a factor in his decision to promote as his comments had generated a race-based complaint by Lt. Goodrum's white colleagues.

Hayes now alleges that he made statements during the June 2021 Lieutenant's meeting, and earlier in private conversations, to make a point about diversity and to gauge the reaction of the white individuals he effectively told would not be selected because of their race.[15] These actions were not harmless. Hayes poisoned Lt. Goodrum's career and rendered him unpromotable based on his race for years to come.

Hayes comments were related to Lt. Goodrum's protected class (Black) and were made after the assessment of candidates for Captain had been completed, but before any individual had been selected for promotion. SOF ¶¶ 24, 36. Hayes made these comments while he held the position of Acting Captain and had the authority to promote individuals to the position at issue. Resp. to Def.'s SOF ¶¶ 37. As such, the statements made by Hayes' serve as direct evidence that his decision not to promote Lt. Goodrum arose because of race based discrimination.

**B.    The Circumstances Surrounding Lt. Goodrum's Non-Selection Establish an Inference of Race-Based Discrimination.**

The facts and evidence of the circumstances surrounding Lt. Goodrum's non-selection for promotion further support an inference of discrimination against the City. A plaintiff relying on circumstantial evidence may proceed under the *McDonnell Douglas* burden-shifting framework by establishing a *prima facie* case of failure to promote, which requires he demonstrate: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) his employer rejected his application under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

---

[15] While Hayes now claims he mentioned "diversity" in the context of the promotion of Lt. Goodrum to speak to "diversity of thought," he spoke to "diversity" only as it related to race during his deposition. Pl.'s Ex. E (Hayes Dep. Tr.) at 39-40.

If a *prima facie* case is established, the burden then shifts to the defendant "to articulate some legitimate non-discriminatory reason for the decision not to promote." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). Once a defendant meets its burden to show a non-discriminatory justification, the plaintiff must establish that its proffered reason is pretext for discrimination. *Id.*

The City does not contest that Lt. Goodrum is a member of a protected class based on his race, Black; that he applied for promotion to the rank of Captain; or that he met the qualifications for the position. Contrary to the City's arguments, the non-selection of Lt. Goodrum for promotion arose under circumstances that give rise to an inference of discrimination. Such circumstances include: (1) the City's failure to adhere to its own policies regarding promotion; (2) Lt. Goodrum's superior qualifications as compared to Newcomb, the individual outside of Lt. Goodrum's protected class promoted by the City; (3) Hayes' decision to transfer Lt. Goodrum to a less desirable position and to replace him with a white, junior colleague, (4) Hayes disproportionate selection of white candidates for promotion to command and assistant command-level positions, and (5) the lack of Black individuals in higher-level command positions within the Department in December 2022, the time of the promotional decision at issue.

As discussed in Section III in the context of pretext, *infra*, this Court may draw an inference of discrimination from the City's conduct.

### 1.    *The City Failed to Adhere to Its Own Policies Regarding Promotions.*

The City contracted with an outside party for the express purpose of ensuring candidates for promotion were fairly and objectively evaluated based on qualifications relevant to the position. SOF ¶ 9. Hayes ignored the result of this process and instead made promotional decisions intended to suit his goals rather than the goals of the Department. SOF ¶ 32.

At the time Hayes promoted Newcomb ahead of Lt. Goodrum, Hayes sought to escape further scrutiny and complaints from the white officers eligible for promotion (everyone other than Lt. Goodrum) after having expressly told them of his intent to promote Lt. Goodrum because he is Black. SOF ¶¶ 19, 24. Hayes placed himself in a position where he needed to consider the race of the candidate he selected and consider the personal consequences of selecting a Black individual for the position. These race-based considerations are impermissible under the law.

The objective process directed by City policy would have resulted in the selection of Lt. Goodrum instead of Newcomb, rendering Hayes' deviation from that policy evidence of discrimination against Lt. Goodrum based on his race.

2. *Lt. Goodrum's Qualifications for the Position of Captain Were Superior to Those of Newcomb.*

In comparison to Lt. Goodrum, Newcomb was deficient in all of the qualifications, skills, and experience considered in Captain promotions by the Department. Lt. Goodrum held more seniority within the Department than Newcomb, performed better than him on evaluations in the years preceding the promotional decision, and scored higher than Newcomb on the objective assessment of candidates. SOF ¶¶ 42-43, 46. Lt. Goodrum had superior Criminal Investigations experience to that of Newcomb, experience which the Department deemed fundamental to the position. SOF ¶ 2. Lt. Goodrum was well liked and respected by his colleagues and in the community alike, and consistently participated in activities that engaged him as an officer within the community. SOF ¶¶ 3-4.

3. *Hayes Transferred Lt. Goodrum to a Less Desirable Position and Replaced Him with a Junior, White Officer.*

In March 2022, Hayes transferred Lt. Goodrum out of a position in which he excelled and replaced him with a junior, white officer, Marcus Downey. SOF ¶¶ 28-31. Hayes named Downey as Acting Captain for Human Resources and Training several months later under the rationale that he was already a part of that Division. SOF ¶ 31. Hayes' transfer of Lt. Goodrum out of Human Resources and Training prevented him from being elevated to Acting Captain at that time, instead allowing Hayes to elevate a less experienced, white lieutenant.

4. *Hayes Disproportionately Selected White Candidates for Promotion to Assistant Command and Command-Level Positions During His Tenure as Chief.*

After he became Chief in April 2022, but prior to promoting Newcomb to Captain in December 2022, all three of the three individuals Hayes promoted to command level positions were white. SOF ¶ 50. Throughout Hayes tenure — and in fact to this day — the Defendant's captains are all white. Resp. to Def.'s SOF ¶ 58. This fact further supports a finding that race played a role in the promotional decision at issue.

5. *Hayes' Membership in the Same Protected Class as Lt. Goodrum Does Not Overcome the Inference of Discrimination.*

Although the City's argument relies in part on the fact that Hayes and Lt. Goodrum are both Black, Title VII discrimination is not limited to conduct between individuals of different races. *See, e.g.*, *Oncale v. Sundowner Offshore Svcs.*, 523 U.S. 75, 78 (1998) (providing that in the "context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race"); *see also Castenada v. Partida*, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.").

34

An employer's classification of an employee's eligibility for a position based on race establishes intent without regard to the decisionmaker's animus or ultimate objective and demonstrate a discriminatory purpose as a matter of law. *Miller v. Johnson*, 515 U.S. 900, 904-05 (1995). Even accepting, *arguendo*, that the persuasiveness of evidence of discrimination is affected where a decisionmaker belongs to the same protected class as the employee alleging race-based discrimination, the additional evidence of discrimination described *passim* outweighs any such consideration.

6.  *The City's Proffered Reasons for Lt. Goodrum's Non-Selection Are False.*

The falsity of the City's *post hoc* explanations for Lt. Goodrum's non-selection is evidenced by their evolving nature, the absence of contemporaneous record in support, and documented attempts by the decisionmaker to concoct an explanation for the decision at issue after it had already been made. A trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation of its decision to promote one employee over another. *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d at 639, 648, n.4; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

In addition to "comparing the plaintiff's qualifications with those of the person who received the promotion," a court may "consider the veracity of the reasons, annunciated by the employer, why the plaintiff did not receive the promotion." *Anderson*, 406 F.3d 248 at 269 (citing *Dennis*, 290 F.3d at 648-49, n.4). As detailed *infra*, evidence of pretext is relevant circumstantial evidence in support of an inference of race-based discrimination.

## II.    THE REASONS OFFERED BY THE CITY FOR ITS NON-SELECTION OF LT. GOODRUM FOR PROMOTION ARE PRETEXT FOR DISCRIMINATION.

The City offered Lt. Goodrum no explanation for his non-selection at the time the promotional decisions at issue were made. After the initiation of litigation, the City put forward changing, inconsistent, and contradictory explanations for these decisions that lack any support through contemporaneous documentation. The lack of documentation is particularly conspicuous given the high-level nature of the promotions at issue and the Department's written, formal processes and procedures attendant to such promotional decisions.

### A. The City Has Offered Evolving Explanations for Its Non-Selection of Lt. Goodrum for Promotion.

The City's explanations for the selection of Newcomb for the position of Captain over Lt. Goodrum in December 2022 have shifted over time.

Plaintiff is permitted to "establish pretext by proving that [his employer's] explanation for an employment decision is 'unworthy of credence' or that the defendant's explanation is false." *Anderson*, 406 F.3d at 269 (citing *Reeves*, 530 U.S. 133, 147 (2000)). Furthermore, these shifting and false explanations can give rise to an inference of discrimination. *Reeves*, 530 U.S. at 147.

Initially, The City provided no reason for Newcomb's selection for promotion over Lt. Goodrum at the time of the decision in December 2022, SOF ¶ 48; nor did it provide an explanation following Lt. Goodrum's filing of a charge of discrimination with the Equal Employment Opportunity Commission based on his non-selection. SOF ¶ 49.

The objective metrics by which Lt. Goodrum should have been measured place his qualifications substantially above Newcomb. Lt. Goodrum's score on the assessment, in fact, placed him in an entirely different category of candidates than Newcomb. SOF ¶¶ 42-43. These

36

metrics are mandated by the announcement for the captain's promotional process and the Candidate Orientation Guide which sets forth the exact standards by which candidates would be assessed for their suitability for the position. SOF ¶ 7. There can be no doubt that Lt. Goodrum was objectively more qualified for promotion than now-Captain Newcomb.

Despite these qualifications, the City's explanations for the selection of Newcomb — first stated during discovery — were: (1) Newcomb's background and credentials being superior to those of Lt. Goodrum; (2) Newcomb's skills and experience relevant to the position being superior to those of Lt. Goodrum; (3) Newcomb having "engaged in community policing" more than Lt. Goodrum; and (4) Newcomb's skill at relating to younger officers within the Department. *See* Pl.'s Ex. Q (City Resp. to Interrog. 11).

In its Motion for Summary Judgment, the City abandoned its contention that Newcomb's background and credentials were superior to those of Lt. Goodrum. Def.'s Mot. for Summ. J. at 22. They are not. SOF ¶¶ 2-5; 46-47. The City also abandoned its claim that Newcomb related better to younger officers than Lt. Goodrum as a reason for Newcomb's selection. Def.'s Mot. for Summ. J. at 22.

Rather than speaking of Newcomb's skills and experience generally exceeding that of Lt. Goodrum, the City now states only that Newcomb's experience in the Criminal Investigations Division was considered. Def.'s Mot. for Summ. J. at 22. Newcomb's experience in criminal investigations is not superior to that of Lt. Goodrum's. SOF ¶ 2.  Instead of referring to Newcomb's engagement in community policing, the City now states that Hayes' assessment of Newcomb, generally, as "community focused" led to his promotion. Def.'s Mot. for Summ. J. at 22. Newcomb's experience in skill in this area is not superior to Lt. Goodrum's. SOF ¶¶ 3-5.

As further evidence of the pretextual nature of these explanations, Hayes is documented as having sought out reasons for his non-selection of Lt. Goodrum *after* Newcomb had already been promoted. Doing so required Hayes deceive Lt. Goodrum's supervisor into believing that he intended to use this information in consideration of candidates to promote. Lt. Goodrum's supervisor could think of no reason why Lt. Goodrum should not be promoted, leaving Hayes empty-handed and unable to explain his decision.

Finally, now and for the first time, the City puts forward that it did not consider Lt. Goodrum *at all* for promotion to Captain in December 2022 as the result of an ongoing investigation and an unwritten, never-before-exercised rule that individuals under any type of investigation cannot be promoted. However, this explanation is simply false. There was no ongoing investigation. Resp. to Def.'s SOF ¶ 81. This transparent, *post hoc* explanation should hold no weight.

### B. The City Can Offer No Contemporaneous Evidence of Its Proffered Reasons for the Non-Selection of Lt. Goodrum.

Absent from the thousands of documents produced by the City is any written record in support of the *post hoc* explanations for the promotional decisions at issue provided by the City. The City does not cite to evidence or documentation of Newcomb's superior criminal investigations experience, his community engagement or community-focused nature, or any other factor relied upon now or previously to support his selection for this role.

The City cannot produce any admissible evidence to demonstrate Hayes — the sole decisionmaker — considered any of the factors provided by the City as explanations for Newcomb's selection to date. Nor can the City produce admissible evidence that Hayes skipped

over Lt. Goodrum for consideration based on a closed administrative investigation or consultation with anyone other than himself.

## CONCLUSION

Following an objective assessment of candidates for Captain in December 2020, Lt. Goodrum — the only Black candidate on the list —ranked in the top group of candidates. Hayes, then Acting Chief, discussed who he intended to promote first from the list with others and consistently arrived at the conclusion it should be Lt. Goodrum, but shared an explanation for his decision that robbed the accomplishment of the honor it deserved: "because he is Black."

The City now contends that Hayes made these statements to challenge white lieutenants on the issue of diversity. But Hayes did not speak to them about diversity, generally; Hayes spoke to them about how he intended to let Lt. Goodrum's race, specifically, guide his decision with respect to the Captain promotional decisions instantly before him. Hayes got the result he expected at significant cost to Lt. Goodrum. He rendered Lt. Goodrum unpromotable.

Lt. Goodrum's Motion for Summary Judgment on his claim of failure to promote should be granted. The undisputed facts support Hayes' decision to promote Newcomb rather than Lt. Goodrum having been motivated by race in an attempt to placate the predominantly white individuals for whom his statements had caused offense. The reasons put forward by the City for the selection of Newcomb over Lt. Goodrum are demonstrably false and find no support in the record. No genuine dispute of material fact remains: Hayes based his promotion decision on Lt. Goodrum's race, and the City's attempts to provide a legitimate basis for Hayes' decision are pretext for discrimination.

To the extent that this Court finds a genuine dispute of material fact remains, these issues may only be resolved through trial. For this reason, the City's Motion for Summary Judgment with respect to Lt. Goodrum's claim of failure to promote should be denied.


DATED: February 26, 2025            Respectfully submitted,


                                    _____/s/_____
                                    Joshua Erlich, VA Bar No. 81298
                                    Katherine Herrmann, VA Bar No. 83203
                                    The Erlich Law Office, PLLC
                                    1550 Wilson Blvd., Suite 700
                                    Arlington, VA 22209
                                    Tel:    (703) 791-9087
                                    Fax:    (703) 351-9292
                                    Email: jerlich@erlichlawoffice.com
                                            kherrmann@erlichlawoffice.com


                                    *Counsel for Plaintiff Lt. Delton Goodrum*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of February, 2025, I electronically filed the foregoing Memorandum in Opposition to the City of Alexandria's Motion for Summary Judgment and in Support of Lt. Goodrum's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert Porter (VSB No. 78934)
Meghan S. Roberts (VSB No. 78983)
Alexandria City Attorney's Office
301 King Street, Suite 1300
Alexandria, Virginia 22314
Telephone: (703) 746-3750
Facsimile: (703) 838-4810
Email: robert.porter@alexandriava.gov
   meghan.roberts@alexandriava.gov


James A. Cales III (VSB No. 41317)
Furniss, Davis, Rashkind and Saunders, P.C.
6160 Kempsville Cir. Suite 341B
Norfolk, Virginia 23502
Tel: 757-461-7100
Fax: 757-461-0083
Email: jcales@furnissdavis.com

*Counsel for Defendant City of Alexandria*


       */s/* Katherine L. Herrmann
       Katherine L. Herrmann, VSB # 83203
       THE ERLICH LAW OFFICE, PLLC
       1550 Wilson Blvd., Ste. 700
       Arlington, VA 22209
       Telephone: (703) 791-9087
       Fax: (703) 722-8114
       kherrmann@erlichlawoffice.com

       *Counsel for Plaintiff Lt. Delton Goodrum*